NATIONAL RY. OF MEXICO v. LIGARDE.†
(No. 5389.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 13, 1915. Rehearing Denied Feb. 10, 1915.)

1. MASTER AND SERVANT (§ 264*)—INJURIES TO SERVANT—NEGLIGENCE—COMPLAINT.

Where a petition for injuries to a servant by the explosion of a locomotive charged defendant with knowledge of the condition of the engine, but did not allege in detail as to how such knowledge could have been obtained, evidence that the defect would have been disclosed by an application of the hydrostatic test was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

2. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—ASSUMED RISK—QUESTION FOR JURY.

In an action for injuries to a servant by the explosion of a locomotive, whether plaintiff assumed the risk *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

3. APPEAL AND ERROR (§ 882*)—RIGHT TO ALLEGE ERROR—EVIDENCE.

Where, in an action for injuries to a servant by the explosion of a locomotive, defendant proved that the hydrostatic test was the best to ascertain the presence of the particular defect, though there was no allegation to that effect in the petition, defendant could not object that plaintiff also proved the same fact and used

defendant's failure to apply such test as a basis of a charge for actionable negligence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

4. APPEAL AND ERROR (§ 730*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment that the court erred in not giving defendant a special charge and general questions to the jury, as they "were all pertinent to and required by the issues of fact under the law," was too general to present any question for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. § 730.*]

5. APPEAL AND ERROR (§ 1122*) — COURT OF CIVIL APPEALS—FINDINGS.

The Court of Civil Appeals will not accede to a request to answer special questions in seriatim as a jury may be required to do.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. § 1122.*]

6. MASTER AND SERVANT (§ 273*)—INJURIES TO SERVANT—ASSUMED RISK.

Where an explosion of a locomotive by which plaintiff was injured was not shown to have been caused by a crack in the dome of the boiler, it was immaterial that plaintiff had equal, if not superior, opportunity with the other officers, agents, and employés of defendant to know of any defect or crack in the dome cap, and whether it was an old crack or one recently made.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 936–938; Dec. Dig. § 273.*]

7. MASTER AND SERVANT (§ 110*) — INJURIES TO SERVANT—EXPLOSION OF LOCOMOTIVE—NEGLIGENCE.

Where an old locomotive, which exploded and injured plaintiff, had been in the shop for repairs, and no kind of inspection would have revealed its steam pressure resistance, but the only perfect test was the hydrostatic or water test, defendant was negligent in failing to apply such test after the repairs had been made.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 214, 214½; Dec. Dig. § 110.*]

8. DAMAGES (§ 132*) — EXCESSIVENESS — PERSONAL INJURIES.

Plaintiff, a train mechanic in defendant's railroad repair shops, was injured by the explosion of a locomotive. He was badly burned about the chest and face, sustained a fracture of the frontal bone which required treatment for four weeks, and suffered hemorrhages from his mouth, nose, and ears. He also passed blood from the bowels and in the urine for a considerable time. His mind was affected by his injuries, and his optic nerves partially paralyzed. He was rendered incapable thereafter of any great physical labor, and several months after the injury he did not appear to be making a satisfactory recovery, and there was evidence that his brain was permanently injured and that he would never regain his normal mental status. *Held*, that a verdict awarding him $20,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by H. Ligarde against the National Railway of Mexico and another. From a judgment for plaintiff against the National Railway of Mexico alone, it appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error pending in Supreme Court.

Greer & Hamilton, of Laredo, for appellant. Hicks & Hicks & Teagarden and Charles M. Dickson, all of San Antonio, for appellee.

FLY, C. J. This is a suit for damages arising from injuries inflicted on Fred Single, an employé of appellant, instituted by appellee as next friend for said Single against appellant and the Texas Mexican Railway Company. The suit was dismissed as to the last-named railway company, and the cause as to appellant was submitted on special issues, and upon the answers to such issues judgment was rendered in favor of appellee for $20,000.

The defense in this case was that Single was a trained mechanic who had worked on the boiler of the engine which exploded, and it was his duty to inspect and discover the defects in the boiler, and that his failure to do so resulted in the explosion that injured him, and also that he assumed the risk of the explosion.

The first assignment attacks the petition, and 14 of the remaining assignments present, with slight variations, the defenses enumerated, and the sixteenth assignment complains of excess in the verdict. Our conclusions of fact are found stated in connection with the consideration of the question of excess and in other portions of the opinion.

[1] The first assignment of error is overruled. The petition alleged the general duty of furnishing Single with a safe place in which to work, and charged appellant with knowledge of the condition of the engine, or in being negligent in not having such knowledge, which it would have had if reasonable care had been exercised. The pleading did not go into details as to how such knowledge could have been obtained, and consequently proof that the hydrostatic test would have disclosed the defect in the engine was admissible. The cases cited by appellant would be applicable if appellee had set out the tests that should have been applied by appellant, omitting the hydrostatic test. In the case of Railway v. Hennessey, 75 Tex. 155, 12 S. W. 608, it was alleged, as grounds of negligence, failure to ring the bell, to whistle, to give signals, to stop the train, and that the train was running too fast; and the court very properly held that proof of a failure to have a light at the crossing was not admissible because not alleged. In the case of Railway v. French, 86 Tex. 96, 23 S. W. 642, it was alleged that the foreman " 'negligently placed a heavy piece of timber on the ground, and caused a ditch to be dug' too close to it, from which cause the dirt caved in and caused the log to fall on plaintiff." It was held that the allegation did not support proof that there were other methods for performing the work that were safer. In the case of Snipes v. Bomar Cotton Oil Co., 161 S. W. 1, it was held that the petition was so defective as to not admit proof of negligence. When appellee alleged negligence in failing to inspect the engine, proof was admissible of any kind of inspection that would have disclosed the defect in the dome of the engine. Railway v. Brinker, 68 Tex. 500, 3 S. W. 99. Appellee could not know, and consequently could not plead, every precaution that should have been taken by appellant in discovering the defective condition of the engine. As said in the Hennessey Case herein cited:

"Where, from the nature of the case, the plaintiff would not be expected to know the exact cause or the precise negligent act which becomes the cause of any injury, and where facts are peculiarly in the knowledge of the defendant, he would not be required to allege the particular cause, but it would be sufficient to allege the fact in a general way, as that there was a defect of machinery or structure or want of skill in operating on the part of defendant or its servants, or some such fact as would give the defendant notice of the character of proof that would be offered to support the plaintiff's case."

[2] The second and third assignments of error are overruled. The facts raised the issue of negligence upon the part of appellant, and it was a question of fact to be determined by the jury as to whether appellee assumed the risk arising from the defective engine or not. The uncontradicted evidence did not show that it was the duty of appellee to inspect the engine. The general foreman of appellant's mechanical department at Laredo, Tex., swore:

"Single was not the man in full charge of the tests in making and putting it in proper condition. He had not anything to do with this (the hydrostatic) test."

The evidence tended to show that the water test alone would have disclosed the defect in the dome of the boiler. It was not the duty of appellee to apply any tests, but that duty devolved upon appellant, although it is reiterated that the undisputed facts showed that Single was the only person upon whom the duty of inspection rested, which assertion is in the very face of the evidence of the general foreman hereinbefore quoted.

[3] The fourth assignment of error is without merit. No matter whether there were any allegations in the petition or not as to the hydrostatic test, appellant thought it important to show that the hydrostatic test was the best, and cannot now complain that appellee also proved the same thing and used it as a weapon against appellant. It put the weapon into his hands.

[4] The fifth assignment of error is very general and should not be considered. It states that the court erred in not giving its special charge and questions to the jury, as they "were all pertinent to and required by the issues of fact under the law." In the statement are copied a charge, which did not give the law under the facts, and 38 questions, and no effort whatever is made to show the pertinency of any of the questions.

The dissertation in the argument on the jury system gives no aid to this court in passing upon the propriety of the requested questions.

[5] The court presented to the jury every issue made by the facts. This court cannot accede to the request "to answer these questions in seriatim just as the jury should have been required to do." The questions were too numerous to be submitted to a jury in any personal injury suit.

[6] It did not matter if Single "had equal, if not superior, opportunity with all other officers, agents, and employés of defendant to know of any defect or crack in the dome cap, whether the same was an old crack or was recently made," as the testimony did not show that the explosion took place on account of a crack in the dome; but the sixth assignment rests on the assumption that there was a crack in the dome and that the explosion resulted therefrom. Every issue made by the facts was clearly submitted to the jury by the court.

The seventh and eighth assignments of error are but repetitions of preceding assignments and they are overruled. The ninth and tenth assignments of error are also overruled. To try a case as was sought by appellant would render it interminable and would confuse the jury instead of enlightening it on the issues.

The eleventh, twelfth, and thirteenth assignments are overruled. The evidence is ample to show that Fred Single did not know that the dome cap was defective, and could not have discovered the defect without a test that he had no authority to apply. The work he did on the dome did not give way, but was intact after the explosion. He did everything required of him in a workmanlike manner. It was not the duty of Single to investigate and know the condition of the dome cap.

[7] The engine was old, was in the shop for repairs, and it was the duty of appellant to apply all tests necessary to ascertain how much steam the boiler would sustain. The only perfect test was the hydrostatic, and the jury was justified in finding that the railroad company was negligent in not applying that test. There is not one word of testimony to sustain the reiterated assertion that it was the duty of Single to apply tests to the engine or to inspect it for defects. No kind of an inspection would have revealed the defect, but the water test would have disclosed it, and appellant alone could apply that test. After his work was completed, there was no leak in the dome. It is admitted by appellant "that it is safest and best to apply the hydrostatic or water test after all repairs are made in the boiler of a locomotive," and yet complaint is made that the jury found that it was negligence to fail to make such test after the boiler had been repaired. The fourteenth and fifteenth assignments of error are overruled.

[8] The evidence shows that Single was injured by an engine that had been in the shops of appellant at Laredo for 20 days undergoing repairs. Single was ordered by his foreman to set the safety valve on the engine preparatory to taking it out on a test run. The original steam pressure that the engine would bear was 140 pounds, but it had been reduced to 130 pounds. The safety valves are on the top of the dome of the boiler. There was an explosion at the dome which struck Single and threw him to the ground in an unconscious state. The steam pressure at the time of the explosion was only 110 pounds. Coleman, the foreman, swore that in his report of the accident he stated that a crack in the dome was the cause of the accident, but did not swear to it on the trial. He said he and the representative of the Interstate Commerce Commission concluded there was a crack in the casing of the dome. There was no proof that there was a crack before the explosion nor that it caused the explosion. Single was badly scalded about the face, and had hemorrhages from his mouth, nose, and ears. He was badly burned about the chest, and there was a fracture of the frontal bone of his head which required treatment for four weeks by a physician. His mind was affected by his injuries. His eyes were injured, the optic nerves being partly paralyzed. He is incapable of any great amount of physical labor, and is mentally unbalanced; one physician testifying that when he saw him Single acted like a crazy man. That was several months after the injury. Single was totally unconscious for 3 days, and only partially conscious for 30 days after the injury. The fact that Single was very nervous and that his mind was unbalanced was testified to by physicians of two other railroad companies. The surgeon of appellant swore that there was a fracture of the bone in the forehead, and that Single had "hemorrhages, vomiting blood and urinating blood, and also passing blood from the bowels," and also that he was in an unconscious condition for three or four days, and then went into a semicomatose condition for two or three weeks, then became melancholic, cross, restless, and nervous. That surgeon swore that Single's condition at the time of the trial, 18 months after the accident, did not compare favorably with his condition before the accident, and that his language was a little incoherent at times. None of the physicians swore that Single would ever recover. We cannot hold that the verdict, under all the circumstances, is excessive. The evidence indicates that the brain of Single is permanently injured, and that he will never regain his normal mental status. We can imagine no worse disaster to a man of average intellect than to have his brain so injured as to seriously affect his mind and cause him to go through life incoherent in his language and childish in his actions.

The judgment is affirmed.